UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X
S.A., by his parents, M.A.K. and K.S.,

        Plaintiffs,

  –against–

NEW YORK CITY DEPARTMENT OF
EDUCATION,

        Defendant.
————————————————————X

**MEMORANDUM AND ORDER**
12-CV-435 (RMM) (MDG)

ROSLYNN R. MAUSKOPF, United States District Judge.

    M.A.H. and K.S. (the "parents") brought this action against defendant New York City

Department of Education ("DOE") on behalf of their son, S.A., seeking relief for violations of the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et seq</u>.  On March 30,

2014, the undersigned issued a Memorandum and Order (the "Memorandum and Order") granting

in large part defendant's motion for summary judgment and denying in large part plaintiffs' motion

for summary judgment.  <u>See</u> ct. doc. 47.

    After entry of judgment, plaintiffs filed a motion for an award of attorneys' fees and

expenses incurred during the course of the administrative proceedings and the instant action.  For

the reasons that follow, plaintiffs' motion is granted in part and denied in part.[1]

BACKGROUND

    The claims in this action, which are discussed in full in this Court's's Memorandum and

Order, are briefly summarized below.

---

[1] While the motion was originally referred to Magistrate Judge Marilyn Go for a Report and
Recommendation, the reference is hereby withdrawn.  This Court is fully familiar with this action,
including the materials submitted on the motion.

S.A. is a student diagnosed with severe autism, as well as having interfering behaviors and difficulties with language skills. Compl. (ct. doc. 1) at ¶ 1; S.A.'s Father's Aff. (ct. doc. 45-1) at 3. A Committee on Special Education ("CSE") convened in April 2010, recommended implementation of a twelve-month individualized educational program ("IEP") for him, which included parent training. See Memorandum and Order at 2, 4. Although plaintiffs informed the CSE that they were unable to attend parent training offered by the DOE on weekdays because of employment and childcare obligations, the IEP indicated that "[p]arent trainings are offered." Id. at 4, 5. Plaintiffs rejected their child's school placement, but S.A. remained in DOE programs beginning the summer 2010 session through the 2010-2011 school year. See id.

On July 7, 2010, plaintiffs filed an amended due process complaint to an Impartial Hearing Officer ("IHO") alleging that DOE failed to offer their son a free and appropriate public education ("FAPE") for the 2010-2011 school year. Id. at 5. Plaintiffs requested compensatory educational services that their child should have received during the 2009-2010 school year; reimbursement for amounts they had paid; and prospective funding for private school tuition and other private services

during the 2010-2011 school year, including a minimum of forty hours per week of 1:1 applied behavioral analysis ("ABA") therapy at school and at home, as well as weekly program supervision and coordination by a Board Certified Behavior Analyst, speech-language therapy, feeding therapy, occupational therapy, physical therapy sessions and auditory integration therapy. Id. In addition, they requested, inter alia, monthly team meetings, parent training and counseling, and transportation to and from school with a commute no longer than one hour each way. Id.

After twelve days of hearings spread over nine months, the IHO determined that DOE had offered S.A. a FAPE during the school year 2010-2011 as a whole, and that most of the therapies the parents requested were not tailored to S.A.'s circumstances.  See id. at 8.  However, the IHO found that the DOE violated S.A.'s right to a FAPE in a limited sense by failing to provide the parents with appropriate training and that DOE failed to prove that the student received a FAPE during the summer of 2010.  See id.  The IHO found these deficiencies were not sufficient to invalidate the IEP.  Id.  Rather, the IHO ruled that plaintiffs  were entitled to receive five hours per week of at-home training for a period of 52 weeks and that the CSE must reconvene to provide compensatory services for the six-week lapse of FAPE during the summer. Id.

Plaintiffs appealed the IHO's decision to the State Review Officer ("SRO") and DOE cross-appealed.  Id. at 9.  The SRO concluded that DOE had provided S.A. a FAPE without material deprivation of his rights.  See id.  Accordingly, the SRO affirmed the IHO's decision to the extent the IHO ruled for the DOE and vacated the IHO's partial award, including compensatory education for the student and at-home parental training.  Id.

Plaintiffs commenced this action on January 31, 2012,  appealing the SRO's decision. Plaintiffs sought the following  relief: (1) modified de novo review and reversal of the SRO's decision; (2) a determination that S.A. is entitled to compensatory education from as early as April 29, 2010, onward; (3) a determination that DOE failed to offer S.A. a FAPE for the entire 2010-2011 school year; (4) reimbursement for certain  unspecified expenses; (5) at least forty hours per week of 1:1 ABA therapy for S.A. in school and at-home, plus related school, home, and community based services; and (6) prospective funding for ABA therapy and related

services.  Memorandum and Order at 10.  After some limited discovery, both sides moved for summary judgment.  Id. at 1.

Ruling on the cross-motions, after review of the administrative record under a modified de novo review standard, this Court affirmed the SRO's decision in large part, finding that "the sole violation that rises to the level of denying the student a FAPE is DOE's failure to provide the parents with appropriate training and counseling."  Id.  The Court found that the SRO failed to address plaintiffs' claim that DOE did not provide the student with at-home services he needed, and thus had no basis for vacating the IHO's order in this respect.  Id. at 25.  The Court deferred to the IHO's finding that the failure is "not only a procedural violation, but also a substantive violation."  Id. at 24.  As a result, the Court ordered that 260 hours of parental training and counseling be reinstated.  Id. at 25, 34.

Additionally, the Court declared plaintiffs "the prevailing parties solely with respect to the claim for compensatory parental training," and thus entitled to partial attorneys' fees and costs.  Id. at 35.  On December 5, 2014, plaintiffs filed the instant motion for attorneys' fees and costs.

In their motion, plaintiffs request an award of attorneys' fees (1) in the amount of $65,331.25 for work at the IHO administrative level, (2) in the amount of $13,652.92 for the SRO appeal, (3) in the amount of $90,133.31 for proceedings in this Court, and (4) $2,698.58 for costs and expenses incurred during all three stages of litigation.

Defendant does not dispute that plaintiffs were the prevailing parties for purposes of the IDEA, but argues that the hourly rates of the attorneys are excessive and that the fee award

should be reduced due to the limited degree of plaintiffs' success.  <u>See</u> Def.'s Mem. in Opp'n (ct. doc. 64) at 6.

DISCUSSION

I.  <u>Legal Standard</u>

A district court in its discretion may award reasonable attorneys' fees to a prevailing party in an action or proceeding brought under the IDEA.  <u>A.R. ex rel. R.V. v. N.Y. City Dept. Of Educ.</u>, 407 F.3d 65, 67 (2d Cir. 2005); 20 U.S.C. § 1415(i)(3)(B).  The Second Circuit directed in <u>A.R.</u>, that the IDEA fee provisions should be interpreted "in consonance with those of other civil rights fee-shifting statutes."  407 F.3d at 75.  Thus, courts calculating fees awarded under IDEA should apply the "lodestar" method by "'multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'"  <u>Id.</u> at 79 (citations omitted).  The lodestar figure represents a presumptively reasonable fee.  <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008).[2] While failing to calculate the lodestar as a starting point is legal error, a district court "may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  <u>Millea</u>, 658 F.3d at 167.  The fees sought may be reduced if the amount "unreasonably exceeds the hourly rate prevailing in the community for similar services by

---

[2] Although the Second Circuit stated in <u>Arbor Hill</u> that it was abandoning use of the lodestar method, the court also instructed that courts "bear in mind *all* of the case-specific variables" in determining a reasonable hourly rate to calculate the "presumptively reasonable fee."  <u>Id.</u> (emphasis in original).  Such an approach "is not at odds with the Supreme Court's reasoning in <u>Perdue</u> because like the lodestar, it takes into account all the 'relevant factors' in setting a reasonable rate, and then uses that rate to determine the reasonable fee award."  <u>See</u> <u>G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.</u>, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (discussing <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542 (2010)).  In 2011, the Second Circuit in <u>Millea v. Metro–North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) cited <u>Arbor Hill</u> and <u>Perdue</u> in reiterating that using the "lodestar" will yield a presumptively reasonable fee.  <u>Id.</u> at 166.

attorneys of reasonably comparable skill, reputation, and experience," or if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. §§ 1415(i)(3)(F)(ii), (iii). However, the fee awarded should not necessarily be proportional to the damages a party successfully obtained, especially for claims where the financial recovery is likely to be small, to attract competent counsel. See Perdue, 559 U.S. at 552; Millea, 658 F.3d at 169.

II.     Hourly Rates

The IDEA specifically provides that fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Under this provision, the "community" for purposes of calculating fees is "typically measured by the geographic area in which 'the action was commenced and litigated.'" A.R. ex rel R.V., 407 F.3d at 79 (quoting Arbor Hill, 369 F.3d at 94). Courts should ordinarily use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee unless the applicants "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009); see Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997). Unless a party shows that "not only the selection of out-of-district counsel was predicated on experience-based, objective factors, [such as counsel's special expertise in litigating the particular type of case], but also of the likelihood that use of in-district counsel would produce a substantially inferior result," a litigant cannot overcome the

presumption of the forum rule. <u>Simmons</u>, 575 F.3d at 176. A party may make such a showing by establishing that local counsel were unwilling or unable to take the case or that no in-district counsel possessed such expertise. <u>Id.</u> In addition, a court may consider the parties' retainer agreement as guidance in determining the reasonable value of the services provided, but is not bound by such an agreement. <u>See</u> <u>Stair v. Calhoun</u>, 722 F. Supp. 2d 258, 273 (E.D.N.Y. 2010). The fee applicant bears the burden of demonstrating that the requested rates are "in line with those prevailing in the community . . . ." <u>G.B. ex rel. N.B.</u>, 894 F. Supp. 2d at 427 (quoting <u>M.L. ex rel. M.P. v. Bd. of Educ. of City of New York</u>, No. 02 CIV. 4288, 2003 WL 1057476, at *2 (S.D.N.Y. Mar. 10, 2003)). A court is also free to rely on its own familiarity with prevailing rates in the district. <u>Simmons</u>, 575 F.3d at 176.

Plaintiffs retained Mayerson & Associates, a law firm based in Manhattan, as their counsel and signed a retainer agreement agreeing to pay Gary Mayerson for his supervisory services at an hourly rate of $600, associate attorneys at rates ranging from $285 to $450, and paralegals at rates of $125 per hour. Retainer Agreement (ct. doc. 63-6) at 3. The hourly rate for Mr. Mayerson subsequently increased to $650 in June 2011; associate Tracy Spencer Walsh's hourly rate increased from $425 to $475 and then to $500; associate Maria McGinley's hourly rate increased from $270 to $285 and then to $350 per hour since July 3, 2012; and associate Mary Cox raised her hourly rate from $250 to $300 in 2013. <u>See</u> Aff. of Gary Mayerson ("Mayerson Aff.") (ct. doc. 62) at ¶ 22; Invoices (ct. doc. 63-2). Travel time was billed at one-half of the attorney's hourly rate. <u>See</u> Invoices.

As mentioned in both parties' papers, in <u>E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.</u>, a decision issued by Judge Daniels of the S.D.N.Y. in March 2014, the court awarded fees based

on an hourly rate of $475 for Gary Mayerson, $175-$225 for associates, and $125-$150 for paralegals. 2014 WL 1092847, at *1 (S.D.N.Y. Mar. 17, 2014). Defendant urges this Court to award the same rates awarded by Judge Daniels in E.F., while plaintiffs argue for the higher rates reflected in the retainer agreement.

Plaintiffs' counsel has submitted declarations from two lawyers in support of the reasonableness of the proposed hourly rates. The first declaration is by Jesse Cutler, who is a partner of the Law Offices of Regina Skyer and Associates, L.L.P. and has been practicing special education law in Manhattan since 2003. Decl. of Jesse Cutler (ct. doc. 62) at ¶ 17. Mr. Cutler asserts that upon a review of Mr. Mayerson's professional qualifications, the $600 and $650 hourly rates charged by Mr. Mayerson are reasonable. Id. The Court finds Mr. Cutler's declaration of limited probative value because, as he admits, the rates he mentions are the hourly rates customarily charged within the Southern District of New York, not the Eastern District. See id. The other affidavit from Ms. Linda Blumkin, Mr. Mayerson's client, is unpersuasive as well. Although Ms. Blumkin is an experienced lawyer in antitrust law, her willingness to pay the high rates charged by counsel and great confidence in the skills of Mr. Mayerson are not dispositive of the question of the relevant market rates in this district. See Decl. of Linda Blumkin (ct. doc. 62) at ¶ 1.

Additionally, plaintiffs have provided detailed information outlining the professional qualifications of the six attorneys and the paralegals who worked on this case. Attorney Gary Mayerson is a partner at Mayerson & Associates. See Mayerson's C.V. (ct. doc. 63-5 at 1). He graduated from Georgetown Law Center in 1979. Id. In 2000, Mr. Mayerson founded Mayerson & Associates, which specializes in the representation of children and adolescents with autism

and related developmental disabilities.  See Mayerson Aff. at ¶ 11.  He has extensive experience in litigating IDEA cases in federal courts and he supervised this case.  See id. at ¶¶ 12, 16.

Attorney Tracy Spencer Walsh has been practicing law since 1994 and currently is a partner at Mayerson & Associates.  See Walsh's C.V. (ct. doc. 63-5 at 5).  She joined Mayerson & Associates in 2008 as a senior counsel and became a partner in 2011.  Id.

Attorney Maria McGinley graduated from New York Law School in 2009 and began to work as a legal intern and then as an associate at Mayerson & Associates in June 2010.  See McGinley's C.V. (ct. doc. 63-5 at 8).  Mary Cox is an attorney duly admitted to the Eastern District and an associate at Mayerson & Associates since 2010.  See Cox's C.V. (ct. doc. 63-5 at 13).  Janna Wince and Brianne Dotts joined Mayerson & Associates after law school in 2008 as associates.  See Wince's and Dotts' C.V. (ct. doc. 63-5 at 7, 12).

To be sure, litigation involving the IDEA is a highly specialized practice area and there is no dispute that plaintiffs' counsel have expertise in this field.  However, as Judge Daniels noted in E.F., "[t]here is no question . . . that the Plaintiffs could have found a capable attorney to represent them at rates lower than those charged by Mr. Mayerson."  Id. at *4 (quoting K.F. ex rel. L.A. v. New York City Dep't of Educ., No. 10 CIV. 5465, 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011) that "the conclusion that there is a shortage of willing attorneys to take on IDEA cases is undercut by the existence of the fee-shifting provision and the number of attorneys who practice in this arena").  The findings of these courts regarding the availability of counsel competent in the IDEA field clearly also apply to this district since the difference in rates is not a factor that "would likely affect a lawyer's choice of engagements."  A.R. ex rel R.V., 407 F.3d at 81 & n. 17.

Moreover, the severity of S.A.'s autism and other intervening behaviors does not, in itself, make this case more complex or difficult; such conditions are not unusual in cases brought under the IDEA. See K.F. ex rel. L.A., 2011 WL 3586142 at *3 (finding that a case involving a preschool child with autism "was neither novel nor complex" and did not raise "any difficult legal issues or key credibility disputes"); E.S. v. Katonah–Lewisboro Sch. Dist., No. 09-CV-4770, 2011 WL 1560866, at *4 (S.D.N.Y. Apr. 20, 2011) (finding case of a single student diagnosed with schizoaffective disorder and borderline intellectual functioning not particularly difficult or requiring "extremely experienced counsel"); cf. E.F. ex rel. N.R., 2014 WL 1092847, at *3 (distinguishing higher rates awarded in a class-action IDEA suit that the court recognized was "much more complex than the ordinary single-plaintiff lawsuit"); G.B. ex rel. N.B., 894 F. Supp. 2d at 430 (noting that courts determining rates awarded in single student IDEA cases "emphasized that the proceedings at issue were not overly complicated" and contrasting rate awarded in L.V., a class action). Laudable as Mr. Mayerson's skills may be, this Court is not persuaded that "a similarly situated parent with a meritorious claim would not have been able to locate a well qualified attorney willing to proceed with this case" charging lower rates. K.F. ex rel. L.A., 2011 WL 3586142, at *4.

This case proceeded much like many other single plaintiff cases brought under the IDEA; after hearings before an IHO and administrative appeal to an SRO, plaintiff brought an action in the district court. The parties ultimately moved for summary judgment, but did not raise any particularly difficult or unusual legal issues in their motions.

Further, plaintiffs request the Court to consider that their counsel had "a higher evidentiary burden" to prove that an award of parental training was warranted because parental

training is compensatory education. Pls.' Mem. in Support of Mot. for Attorneys' Fees (ct. doc. 61) at 9. They assert that while an award of "ordinary educational programs need only provide some benefit [to a student]," compensatory awards "must place the student in the position the student would have been in but for the violation," and that this case requires more time and expertise then most IDEA cases. Id. (citing Draper v. Atlanta Independent Sch. System, 518 F.3d 1275, 1289 (11th Cir. 2008)). This argument is without support, as Draper, the only case cited by plaintiffs, concerns the proportionality of the court's award of compensation for a violation of the IDEA, and is not about counsel's burden of proof. See Draper, 518 F.3d at 1289. Indeed, most of the IDEA cases involve "compensatory education" as a form of relief, and this case is no more complex than others in this regard.

Accordingly, the rates awarded should reflect the fact that the claims here are neither unusual nor complex.

As the Second Circuit has noted, the prevailing rates in the Eastern District are generally lower than in the Southern District. See Luciano, 109 F.3d at 113. Courts in this district determining fee applications under the IDEA have awarded $350-$375 per hour for partners, $200-$250 for senior associates, and $150 for junior associates. See Mary Jo C. v. Dinapoli, No. 09-CV-5635, 2014 WL 7334863, at *7 (E.D.N.Y. Dec. 18, 2014) (awarding $350 per hour to attorney with over 30 years of experience representing people with disabilities, $150 per hour for junior associate and $85 per hour for law school student); Dzugas-Smith v. Southold Union Free Sch. Dist., No. 07-CV-3760, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) (awarding $250 per hour set forth in the retainer agreement for an attorney with 25 years of civil litigation experience); Green v. City of N.Y., No. CV 05-429, 2009 WL 3088419, at *5 (E.D.N.Y. Feb. 13,

2009) (determining reasonable hourly rates to be approximately $375 per hour for an attorney with 41 years of experience; $350 for attorneys with 17-19 years of experience; $200 for attorneys with 5-6 years of experience; and $150 for associates with three years of experience). Although some of these decisions were issued several years ago, they are instructive.[3]

Both Mr. Mayerson's requested hourly rates, $600 to $650, and Ms. Walsh's hourly rates, $425 to $500, substantially deviate from the prevailing hourly rates for partners in the Eastern District.  See Dzugas-Smith, 2010 WL 3852003, at *3; Green, 2009 WL 3088419, at *5. Nonetheless, defendant argues that this Court should award the rates awarded in E.F., or "rates that are otherwise consistent with earlier decisions of this Court."  Def.'s Mem. in Opp'n at 11, 12.  Given defendant's apparent acquiescence to the probative value of the determinations in E.F., this Court finds no reason not to award fees based on an hourly rate of $475 for Mr. Mayerson in light of his undisputed experience in this area of the law and quality of services. See G.B. ex rel. N.B., 894 F. Supp. 2d at 432-35 (given the stature and level of experience of counsel in the field and the awards to other attorneys in civil rights cases, court awarded $450 per hour to attorney with 30 years civil rights litigation experience).

Similarly, defendant agrees with the hourly rates awarded in E.F. of $225 for Ms. Dotts and $200 for Ms. Cox.  Ms. Dotts worked on this case only in 2010 when she was a second year associate, while Ms. Cox, who has less experience, worked on the case from 2010 through 2013. Since fee awards should be based on current, rather than historical rates, A .R. ex rel. R.V., 407 F.3d at 83,  this Court finds no reason to disturb the rates accepted by defendant.  Likewise, since

---

[3] While rates ostensibly have increased with time, "it is equally well known that with the rise in rates came their unprecedented discounting and billcutting, which makes those increases largely illusory."  Encalada v. Baybridge Enterprises Ltd., No. 14 CIV. 3113, 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014).

defendant acknowledges that Ms. Wince has experience equivalent to Ms. Dotts, this Court awards fees for her work based on a billing rate of $225 for her work in 2014.

Judge Daniels in the E.F. decision found that $175 per hour is an appropriate billing rate for Ms. McGinley. Plaintiff argues that because Ms. McGinley has over 10 years of legal and special education experience and was the lead associate in the case, she should be awarded fees based on a billing rate of $350. However, as defendant points out, Ms. McGinley has only five years of legal experience and argues her hourly rates should be comparable to Ms. Cox's, or $200. This Court agrees with the defendant that a $200 hourly rate is appropriate. Although Ms. McGinley's extensive billing entries do not show that her past experience in special education played any role in the legal services she rendered, this Court assumes she was likely to have benefitted from her understanding of the underlying conditions in dealing with the fact-specific legal issues presented here.

The E.F. decision did not discuss billing rates for Ms. Walsh. She is an attorney with over 20 years' experience as a litigator, but only six years' experience in special education. Defendant objects to her requested rate of $475 an hour, and contends that she should be awarded an hourly rate of $375. Since Ms. Walsh clearly is not as experienced as Mr. Mayerson, both in terms of the number of years she has been a litigator and has specialized in special education, her hourly rate should be much lower. I award a rate of $375 an hour, which is a rate in line with rates awarded in this district.

Although DOE does not challenge the hourly rates for the non-attorney supporting staff, this Court notes that the billing rates for the paralegals and legal interns are above the prevailing rates in the Eastern District. An hourly rate of $125 for paralegals is higher than the hourly rate

generally approved in this District.  See Gesualdi v. Tapia Trucking LLC, No. 11-CV-4174,

2013 WL 831134, at *2 (E.D.N.Y. Mar. 6, 2013) (holding that $100 per hour for paralegals is

excessive).  However, in light of defendant's agreement to the rates for paralegals in E.F., this

Court awards fees based on an hourly rate of $150.00 for work by Ms. Mauricio Bertone, the law

firm's chief paralegal, and $125 per hour for the other paralegals.  Since legal interns are

generally compensated at the same rate as paralegals in this district, I award $125 per hour for

the work of a legal intern.  See Larsen v. JBC Legal Grp., P.C., 588 F. Supp. 2d 360, 364

(E.D.N.Y. 2008).

III.  Hours Billed

In order to calculate the reasonable hours expended, the fee application must be

supported by contemporaneous time records absent unusual circumstances.  See Scotts v. City of

N.Y., 626 F.3d 130, 133 (2d Cir. 2010).  A district court has discretion in assessing whether the

claimed hours are excessive.  See Stair, 722 F. Supp. 2d at 270.  "If a court finds that the fee

applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or

disallow certain hours or, where the application for fees is voluminous, order an across-the-board

percentage reduction in compensable hours."  Spalluto v. Trump Int'l Hotel & Tower, No.

04CIV.7497, 2008 WL 4525372, at *6 (S.D.N.Y. Oct. 2, 2008) (quoting Santa Fe Natural

Tobacco Co. v. Spitzer, No. 00 CIV 7750, 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002)).


A.  Unsuccessful Claims

It is settled that the "degree of success" is the most important factor in determining the

reasonable fees to be awarded to a prevailing party.  Barfield v. N.Y.C. Health & Hosps. Corp.,

537 F.3d 132, 152 (2d Cir. 2008) (citing <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992)).  A court

must consider "[b]oth the quantity and quality of the relief obtained," as compared to the issues

actually litigated.  <u>Id.</u>  "Where the plaintiff has failed to prevail on a claim that is distinct in all

respects from his successful claims, the hours spent on the unsuccessful claim should be

excluded in considering the amount of a reasonable fee."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424,

440 (1983); <u>Starkey v. Somers Cent. Sch. Dist.</u>, No. 02 CIV. 2455, 2008 WL 5378123, at *2

(S.D.N.Y. Dec. 23 2008).  "Deciding whether the successful and unsuccessful claim are

unrelated, however, is not an exact science."  <u>Starkey</u>, 2008 WL 5378123, at *2.  In many cases,

"plaintiff's claims for relief will involve a common core of facts or will be based on related legal

theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it

difficult to divide the hours expended on a claim-by-claim basis."  <u>Hensley</u>, 461 U.S. at 435.  In

such circumstances, courts in this Circuit have found it appropriate to cut hours across the board

by some percentage to reflect the extent of the success plaintiffs achieved.  <u>See</u> <u>T.K. ex rel. L.K.</u>

<u>v. N.Y.C. Dep't of Educ.</u>, No. 11 CIV. 3964, 2012 WL 1107660, at *7 (S.D.N.Y. Mar. 30, 2012)

(50% reduction where three forms of relief, including parental education, were granted); <u>Starkey</u>,

2008 WL 5378123, at *6 (reducing the attorneys' fees by 70% where plaintiff obtained a

settlement of $20,000 for what plaintiff contended was a denial of her daughter's constitutional

rights); <u>P. ex rel. Mr. P. v. Newington Bd. of Educ.</u>, 512 F. Supp. 2d 89, 114 (D. Conn. 2007)

(40% reduction where the parents prevailed on two of the four major issues and one procedural

violation).

Here, plaintiffs asserted in the complaint that DOE committed ten procedural and

substantive violations.  They prevailed on only one claim for parental education and counseling

worth $45,500.  See Memorandum & Order at 24, 25.  Defendant argues that because plaintiffs prevailed on only one claim, and that such a claim required minimal effort, plaintiffs' fees should be reduced by at least 70%.  See Def.'s Mem. in Opp'n at 3.  DOE argues that because this claim was factually and legally distinct from the claims plaintiffs lost, and that it was not central to the case, the Court should consider only the amount of attorneys' time spent on the successful claim. See id.

Plaintiffs argue that it is extremely difficult to separate the time the attorneys spent on the relief actually obtained from the other denied relief.  See Pls.' Mem. in Support of Mot. for Attorney's Fees at 11.  The attorneys spent most of their time preparing generally for the litigation, which involved interrelated arguments and factual backgrounds.  Id.  Plaintiffs urge the Court to look beyond the quantity of the relief obtained and instead focus on the quality of the granted relief.  Id.  Plaintiffs emphasize the great benefits parental training and counseling could provide to the student because it enables the parents to promote positive developments at home and in the community.  See id.

This Court finds that the various claims advanced by plaintiffs are based on distinct facts, even though they arise from a common core of facts stemming from S.A.'s autism, which  entitle him to receive benefits and a FAPE under the IDEA.  Needless to say, the nature and extent of S.A.'s condition was necessary to establish plaintiffs' claim for parental training.  However, plaintiffs devoted most of their claims to unsuccessfully challenging the adequacy of the programs offered under the IEP and seeking substitutes, including implementation of other types of ABA therapies or placement of their son in a private school.  In plaintiffs' thirty-five-page memorandum in support of their motion, plaintiffs devoted most of their brief to issues arising

during the summer of 2010, the IEP's failure to provide 1:1 therapy, and claims for other therapies and services that the Court rejected.  <u>See</u> Pls.' Mem. in Support of <u>De</u> <u>Novo</u> Review (ct. doc. 28).  In contrast, plaintiffs limited discussion of at-home parental training to one page.  <u>Id.</u>  Although acknowledging that the DOE violated both the procedural and substantive rights of S.A. to a FAPE with respect to parental training, the Court nonetheless declined to invalidate the IEP entirely.  Memorandum and Order at 25.  As such, the prevailing claim and the unsuccessful claims were not inextricably intertwined as plaintiffs' counsel argue.

Defendant contends that parental training was not central to the case because it does not afford S.A. an educational benefit, but rather, only helps the plaintiffs control S.A.'s aggressive behavior.  <u>See</u> Def.'s Mem. in Opp'n at 5.  However, as the Court found in deferring to the IHO's ruling, the failure to provide the parents with at home training and counseling violated the student's right to a FAPE.  <u>See</u> Memorandum and Order at 23-25.   As the IHO found, parental training and education enables the plaintiff to acquire the necessary skills that will assist in addressing S.A.'s aggressive behaviors, and thus support the implementation of their son's IEP and, most importantly, reinforce the skills S.A. acquires at school.  For these reasons, the IHO found that parental training was a component of a FAPE in providing eventual educational benefits to S.A., and not limited to helping plaintiffs handle S.A. at home.

However, plaintiffs' success is clearly limited in view of their lack of success in pursuing their other claims.  The lack of a close connection between plaintiffs' claim for parent training and their other claims is most apparent in the decision of the IHO summarizing the evidence in the proceedings before her.  <u>See</u> Hearing Officer's Findings of Fact and Decision dated June 15, 2011 ("IHO Dec.") (ct. doc. 35-2).  The other claims on which plaintiffs did not prevail not only

predominated the proceedings, but also involved, in large part, very different evidence having nothing to do with parental training.  See IHO Dec.  For example, in addressing challenges to the adequacy of the IEP, the IHO discussed testimony and other evidence regarding the class setting; instructional methodologies, programs and materials; the extent of 1:1 time between the teacher and S.A., and S.A.'s  progress and response.  IHO Dec. at 8-13, 15.  Likewise, parental training was not discussed by the IHO in considering plaintiffs' claims regarding the excessive travel time to and from school, the inadequacy of the 2010 summer program, entitlement to compensatory education for April through June 2010 and insufficiency of related services, including behavior therapy.  Id. at 15-21.

On the other hand, when considering plaintiffs' claim regarding the lack of parent training, the IHO referred both to
the testimonies of plaintiffs, and to the opinions of an occupational therapist and the speech pathologist that home training would assist in "speech gains made at school," and S.A.'s ability to socialize and communicate.  Id. at 14.  Thus, the evidence regarding plaintiffs' claims seeking parent training necessarily overlapped to some degree with evidence on other claims.  Id. at 15.

One aspect of legal work before this Court that clearly was limited to plaintiffs' other claims concerned the pretrial discovery sought by plaintiffs.  After the initial conference held on April 13, 2012, plaintiffs moved for discovery to supplement the administrative record.  See ct. doc. 10.  After briefing, including supplementation of submissions pursuant to the Court's direction at a conference on May 21, 2012, the Court granted plaintiffs' motion in part and ordered limited discovery regarding services S.A. received during the summer, 2010.  See minute entry filed on 6/13/2012.  Since the additional discovery only related to the summer

program, the 30 hours of time spent by Ms. Walsh, Ms. Cox, and Ms. McGinley on the motion are not recoverable.

      B.      <u>Vague and Excessive Entries</u>

Defendant also contends that plaintiffs' counsel's time entries are vague and requests the Court to reduce the hours claimed. Def.'s Mem. in Opp'n at 12. After review of the time records dated from June 29, 2010 to May 29, 2013, this Court disagrees. While the fee application must be specific enough for a court to assess the amount of work performed, "[a]ttorneys are not required to provide the court with a detailed accounting of each minute spent performing a task in the case." <u>Douyon v. N.Y. Med. Health Care, P.C.</u>, 49 F. Supp. 2d 328, 349 (E.D.N.Y. 2014). The entries provided by Mayerson & Associates contain detailed descriptions of the nature of the work performed, such as "[o]ngoing editing and drafting of reply brief," and "[d]iscussion with TSW re: next day of hearing." <u>See</u> Invoices at 3, 23. The firm identified the general subject matter of the time entry, which, given the nature of the case is generally sufficient. Thus, the Court declines to reduce the hours on the basis of vague billing entries.

Defendant also argues that plaintiffs' time records reflect excessive billing due to inefficient staffing. Def.'s Mem. in Opp'n at 14. Plaintiffs used six attorneys during the course of the litigation. "Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer." <u>Kapoor v. Rosenthal</u>, 269 F. Supp. 2d 408, 414 (S.D.N.Y. 2003). Generally, this Court does not find that multiple attorneys were used by plaintiffs in an unreasonable manner. Mr. Mayerson, Ms. Walsh and Ms. McGinley are the attorneys who performed the bulk of the work in this case, while Ms. Cox, Ms. Wince and Ms. Dotts were supporting players, who billed a total of 16.12 hours. <u>See</u> Pls.' Mem. in Support of

Mot. for Attorneys' Fees at 18.  From the billing entries, each attorney appeared to have his specific contributions to this case.  Moreover, this Court does not find that counsel billed an unreasonable amount of time for conferences and meetings, and defendant does not point to specific dates when this occurred.  In fact, even though the IHO indicated in her decision that two attorneys from the firm appeared on many of the hearing days, the billing records submitted indicate time charged for attendance on most days by only one attorney.  For example, the IHO noted that Ms. McGinley and Ms. Walsh attended hearings held on January 21, 2011 and January 31, 2011, but the billing records contain entries for attendance at the hearing only by Ms. McGinley for January 21, 2011 and by Ms. Walsh for January 31, 2011.  Compare IHO Dec. at 2 with ct. doc. 63-2 at 6, 7-8.  Thus, a reduction for excessive billing is not necessary.

In sum, this Court finds a reduction in the fees claimed is warranted only because of plaintiffs' lack of success in pursuing most of their claims asserted in this action.  While this Court rejects plaintiffs' argument that all the claims are inextricably intertwined, this Court finds that a reduction of 50% is appropriate in recognition of the importance of the relief that plaintiffs did obtain.  Accordingly, in light of this reduction and applying the rates discussed above for each attorney, this Court awards plaintiffs attorneys' fees as follows:

|  | (a)<br>Hourly<br>Rate | (b)<br>Hours<br>Claimed | Fees Awarded<br>(a * b) / 2 |
|---|---|---|---|
| Gary Mayerson | $475.00 | 82.60 | $19,617.50 |
| Gary Mayerson (Travel) | $237.50 | 3.00 | $356.25 |
| Tracy Spencer Walsh | $375.00 | 72.00 | $13,500 |
| Tracy S. Walsh (Travel) | $187.50 | 4.00 | $375.00 |
| Brianne Dotts | $225.00 | 3.00 | $337.50 |
| Janna Wince | $225.00 | 2.50 | $562.50 |
| Maria McGinley | $200.00 | 230.05 | $23,005.00 |
| Maria McGinley (Travel) | $100.00 | 7.00 | $350.00 |
| Marnie Cox | $200.00 | 10.62 | $1,062.00 |
| Mauricio Bertone | $150.00 | 0.20 | $15.00 |
| Paralegals | $125.00 | 16.41 | $1,025.62 |
| Law Interns | $125.00 | 13.37 | $835.63 |
| TOTAL |  | *444.75* | $66,104.49 |

IV.     Costs

Plaintiffs also seeks reimbursement of $2,698.58 in costs, which are itemized in the

invoices submitted.  See Pls.' Mem. in Support of Mot. for Attorneys' Fees at 22; Invoices at 29-

33.  Defendant does not contest that plaintiffs are entitled to reimbursement of these costs under

the IDEA, which include filing fees, service of process fees, postage and transcription fees.  See

Def.'s Mem. in Opp'n at 15 n.4.  Since the amounts claimed appear to be reasonable, the Court

grants plaintiffs costs in the amount sought.

CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part plaintiffs' motion

for attorneys fees and costs.  This Court awards attorneys' fees of $66,104.49 and costs in the

amount of $2,698.58.  All other relief sought is denied.  The Clerk of Court is directed to enter

judgment accordingly.

                              SO ORDERED.


Dated:  Brooklyn, New York                    *Roslynn R. Mauskopf*
        September 22, 2015          _____
                                    ROSLYNN R. MAUSKOPF
                                    United States District Judge